DRAKE, Ch. J.,
delivered the opinion of the court:
This is a motion, filed June 30,1879, “ to correct an error appearing on the face of the record,” in a judgment rendered in favor of the claimant on the 6th of December, 1869, for the sum of $41,355.33, which it is claimed should have been for $41,855.33, or for $500 more than it was entered for.
The claimant refers to the opinion of the court in the case, as published in 5 C. Cls. R., 121, where the court stated the calculation on which its judgment was based, and where it is quite apparent that there was an arithmetical error in stating “32 days’ running, at $400,” as aggregating $12,300, when the aggregate should have been $12,800.
The object of this motion is to enable the claimant to get the $500 of which he was deprived by that error; and in support of his motion he files his affidavit, sworn to on the 16th of May, 1879, stating the facts, and closing with the declaration that the error in the judgment was first brought to his attention during the then present term of the court (that is, the term which began on the first Monday of December, 1878), and that during that term, for the first time, he was informed that the court had the power to correct the error.
These are the facts as stated by the claimant, but they are *170 not all tbe facts that the record contains in regard to this case. There are others which must be stated in order to see the whole matter.
As before said, the judgment for the claimant was rendered December 6, 1809. From it the defendants appealed. The Supreme Court affirmed the judgment.
Thereafter, on the 1st of June, 1871, the defendants filed a motion for a new trial, alleging, in support of it, that for a part of the amount for which the court had given judgment in claimant’s favor, his receipt in full had since the trial been found iii the office of the Third Auditor of the Treasury; and further, that, owing to a misprint in a deposition used at the trial, the judgment was largely in excess of the amount which the claimant ought to have recovered; and, further, that it appeared from original receipts on file in that Auditors office, and from original reports on file in the office of the Quartermaster-General, that the steamer John H. Bussell, for compensation for the services of which the suit was brought, was not seized or impressed into the service of the United States, as alleged by the claimant, and as the court had found, but was employed by the United States simply as a common carrier; and that the claimant had been paid in full for the services of the boat during the time covered by the judgment.
This motion was first argued before four judges, who, in conference, were equally divided in opinion as to its allowance.
While the matter was still in conference, the Assistant Attorney-General made a motion before the full bench to remand the motion for a new trial to the law docket for reargument, which was allowed, and the reargumént took place before all the judges. A majority of them overruled the motion for a new trial for want of jurisdiction, because, after it was made, the mandate of the Supreme Court had been filed affirming the judgment of the court in the case, and because two of the four judges before whom the motion was previously argued and to whom it was submitted, had theretofore rendered and filed their decision that the motion should be denied on the merits.
The Attorney-General then applied to the Supreme Court for a mandamus to this court to hear and determine the motion for a new trial. An alternative mandamus came down to us, to which answer was made. The answer being deemed by the Supreihe Court insufficient, a peremptory mandamus was issued, which *171 was filed in tbis court in vacation on tbe 27tb of August, 1872. On tbe 31st of that month tbe claimant voluntarily filed in tbe clerk’s office of tbis court a remittitur of $4,000 of bis judgment, and tbe remainder was paid bim at tbe Treasury, and tbe motion for a new trial was never pressed to a bearing, but is .to this day among tbe unfinished business of tbe court. Tbe reason for giving tbis brief abstract of tbe history of tbe motion for a new trial and tbe mandamus proceedings will presently appear. Tbe full report of those matters is in ex parte United States (16 Wall., 699).
Upon tbe case, as thus stated, it will at once be seen that tbe motion is not to amend a clerical error or imperfection in the judgment record. Were it that alone, we should feel bound by tbe decision of tbe Supreme Court in Bank United States v. Moss: (6 How., 31), that tbe court may at a subsequent term set right mere forms in its judgments or correct misprisions of its clerks, and that tbe right to correct any mere clerical errors so as to conform tbe record to tbe truth always remains.
But here tbe judgment record is in exact accordance with the' conclusion of law pronounced by tbe court upon tbe facts found, that is, with tbe judgment declared by tbe court, and tbe motion is to “correct an error” in that judgment, shown by tbe opinion of tbe court on which tbe j udgment was based. It is, in effect, a writ of error coram, noKs. To grant tbe motion, therefore, is not to amend an error in tbe judgment record, or a clerical misprision, or a defect in form, but to set aside a final judgment, and in lieu thereof render another for a larger sum.
When tbe court is moved to such a proceeding, tbe first question is, whether it has legal power to do tbe act; but before considering that point, we will proceed upon tbe supposition that it has complete authority in tbe premises, and dispose of other questions which, upon that assumption, arise. •
In tbe absence of express statute requiring a court in a defined case to allow a particular amendment, it is well settled that tbe power to grant amendments injudicial proceedings is a discretionary power, to be exercised or not, as tbe court on tbe facts before it may deem just and proper. Viewing tbis motion in that light, tbe question is, whether a case is presented which ought to move us to exercise that discretion in favor of tbe motion. This we must answer in tbe negative, on grounds to be now stated.
*172 Ill tbe first place, tbe motion was filed out of all reasonable time; that is, nearly ten years after tbe judgment was rendered, and about seven years after it was paid and satisfied, and at a time when only one of tbe judges wbo were present when tbe judgment was rendered remains on tbe bench. If tbis amendment were allowed after tbat lapse of time, wby might we not to-morrow set aside and correct a judgment rendered twenty or fifty years ago, if tbe court, so long ago as that, had had tbe power to render judgments'? If we would go back to either period and change a judgment, what would become of tbe stability of our decisions and tbe sanctity of our records ? At what point of time would tbe former -become stable and the latter inviolable ? And if after so long a time we should correct a judgment by increasing tbe amount of tbe claimant’s recovery, wby might we not correct one by decreasing tbe amount, and so open tbe door for tbe government to recover back from tbe claimant tbe difference between the amount of tbe original judgment paid to him and tbat of tbe amended judgment 7 It matters not tbat tbe claimant was unaware of tbe error until nearly ten years bad elapsed. It was bis business at tbe time to see tbat be got judgment for all be was entitled to, and be cannot justify bis long delay in seeking this correction by bis own neglect to watch tbe accuracy of tbe judgment awarded him.
A second reason grows out of tbe facts we have stated in regard to tbe motion for a new trial, tbe mandamus, and tbe remit-titur. Tbe claimant bad recovered here a judgment for tbe large sum of $41,355.33, which, on appeal, was affirmed. To all appearance, be bad but to present a transcript of tbe judgment at tbe Treasury and receive payment of it; but a motion for a new trial was interposed by tbe government, which blocked tbe way to tbat consummation. After a protracted struggle on bis part against a bearing of tbat motion, tbis court was ordered by tbe Supreme Court to bear and determine it. Tbe order reached tbis court at a time when more than three months must necessarily elapse before tbe motion could be beard and decided; and if it should be sustained, years more of litigation might ensue. To avoid tbe possibility of such a result, be hastened to settle tbe matter, and within four days after tbe peremptory mandamus was served, voluntarily remitted $4,000 of tbe judgment. Tbat remittitur, in our opinion, opens tbe way to tbe presumption tbat, in determining what amount be would remit *173 the very $500 in question was considered, if not by Mm by Ms counsel, and was intended to be abandoned. TMs presumption tbe claimant lias not attempted to meet. It is not rebutted or weakened by Ms affidavit that the error was first brought to his attention nearly ten years after the date of his judgment; for non constat that it was not all that time known to his counsel, though not told to himself. If known to his counsel, it was the same as if known to himself; if not so known, it was the claimant’s duty to show that fact, for whatever it might be worth.
But there are more serious obstacles than these to granting-this motion. Where is the power of the court, on motion only, at a term subsequent to that at which a final judgment was rendered, to set aside the judgment and correct an error committed by the court in making up its amount ? On this point the claimant relies on section 954 of the Revised Statutes, which, omitting words not relevant to the present matter, is as follows:
“ Sec. 954. No summons, writ, declaration, return, process, judgment, or other proceedings in civil causes, in any court of the United States, shall be abated, arrested, quashed, or reversed for any defect or want of form; but such court shall proceed and give judgment according as the right of the cause- and matter in law shall appear to it, without regarding any such defect or want of form, and such court shall amend every such defect and want of form.”
In our opinion, this authorizes no amendment in anything but defect or want of form, and, therefore, affords no aid to a motion to set aside and change a final judgment rendered at a previous term; and such, in our view, is the ruling of the Supreme Court. In JacksOn v. Ashton (10 Pet., 480), where a motion was made to amend the record in a case dismissed at a previous term, and reinstate the case, the court said: “It would, in effect, be a reversal of the former decree of the court. We have no power over the decrees rendered by this court after the term has passed and the cause has been dismissed or otherwise finally disposed of here.” And in Bank United States v. Moss, above cited, that court reversed an order of a circuit court, made on motion, setting aside a judgment and verdict rendered at a previous term, and dismissing the case for assumed want of jurisdiction. Said the court: “ It was too late, after final judgment, and at the next term, and by motion only, *174 to set aside tbe judgment and verdict on account of a supposed want of jurisdiction. * * * Tbe only relief for errors of law in sucb cases is usually by new trial, review, writ of error, or appeal, as either may be appropriate and allowable by law, or by some other mode specially provided by statute.”
These decisions are conclusive against this motion. But were there no such rulings, there is another matter which we deem in itself alone sufficient to require the motion to be overruled.
By section 7 of the Act March 3, 1863 (12 Stat. L., 765), it ivas provided that the payment by the government of any judgment of this court should be “ a full discharge to the United States of all claim or demand touching any of the matters involved in the controversy”; and that provision is now in force, as section 1092 of the Bevised Statutes.
In the claimant’s affidavit he stated that the judgment he now seeks to correct “was paid, satisfied, and discharged by the United States by the payment of the amount thereof” to him. His receiving that payment was not only a full discharge of the Uniied States, but also a release of all errors in the judgment. As between him and the defendants there is nothing remaining; it is all dead, and no mere motion by either party can resuscitate it in the least degree.
On every ground the motion to correct the judgment must be overruled.
Nott, J., was absent when this motion was heard, and took no part in its decision.