Peelle, J.,
delivered the opinion of the court:
The question presented in this case is (1) whether a committee of Congress, under the act of March 3, 1883 (22 Stat. *358 L., 485), known as the Bowman Act, can transmit to the court a second time a claim or matter after the same has once been judicially investigated, the facts found and reported to Congress, and the amount allowed by the court appropriated for “as a full and final discharge” and paid; and (2) if that can be done, whether, under such - circumstances, the claim is discharged and forever barred under that appropriation and under Revised Statutes, sections 1092 and. 1093.
The act of March 3, 1883, is, as its title indicates, “an act to afford assistance and relief to Congress and the Executive Departments in the investigation of claims and demands against the Government,” the first section of which reads:
“ That whenever a claim or matter is pending before any committee of the Senate or House of Representatives, or before either House of Congress, which involves the investigation and determination of facts, the committee or House may cause the same, with the vouchers, papers, proofs, and documents pertaining thereto, to be transmitted to the Court of Claims of the United States, and the same shall there be proceeded in under such rules as the court maj’- adopt. When the facts shall have been found, the court shall not enter judgment thereon, but shall report the same to the committee or to the House by which the case was transmitted for its consideration.”
It is for “the investigation and determination of facts”' that such claims are authorized to be transmitted to the court, and there appears to be no limitation in the act on the right of any committee of either House of Congress to transmit to the court any claim or matter pending before it.
We must, therefore, hold that the claim before us was. properly transmitted by the Committee on War Claims of the House of Representatives. It remains for the court to determine, however, the effect of the payment of the amount allowed.
On March 12, 1886, the claim was originally transmitted to the court under the same act by the same committee, and the petition was filed May 17,1886, under No. 638 Congressional, claiming $7,293.50. Thereafter, June 4, 1889, the court filed its findings of fact, wherein it was found that there were taken from the claimant by the militaiy forces of the United States, for their use, during the war for the suppression of *359 tbe rebellion, stores and supplies of the character and kind described in the petition, then reasonably worth the sum of 12,860, no allowance having been made for the poultry or fruit alleged to have been taken.
The findings thus filed were reported to Congress, and thereafter, March 3, 1891 (26 Stat. L., 1441, 1453), an appropriation to pay the amount so allowed was made in these words: .
“That the Secretary of the Treasury be, and is hereby, authorized and required to pay, put of any money in the Treasury not otherwise appropriated, except as hereinafter provided, to the several persons in this act named, the several sums mentioned herein, the same being in full for, and the receipt of the same to be taken and accepted in each case as a full and final discharge of the several claims examined, investigated, and reported favorably by the Court of Claims under the provisions of the act of March third, eighteen hundred and eighty-three, etc. * * *
“ To Joseph M. Pilkington, of Pettis County, Missouri, two thousand eight hundred and sixty dollars.”
The sum thus appropriated was subsequently paid to the claimant, he giving his receipt therefor in accordance with the act.
The second reference of the claim to the court was made March 3, 1892, after the appropriation and payment of the sum aforesaid, and this is the same and identical claim first transmitted. The petition under the last reference was filed June 3,1892, for the same and identical items and values as in the first petition.
The defendants contend that the payment thus made, under the language of the appropriation act, operates “ as a full and final discharge ” of the claim so investigated and reported to Congress, and in addition thereto they contend that the payment of said claim comes within section 1092 and 1093, which read:
“ Seo. 1092. The payment of the amount due by any judgment of the Court of Claims and of any interest thereon allowed by law, as hereinbefore provided, shall be a full discharge to the United States of all claim and demand touching any of the matters involved in the controversy.
! ‘ Sec. 1093. Any final judgment against the claimant on any cláim prosecuted as provided in this chapter shall forever bar *360 any further claim or demand against the United States arising' out of the matters involved in the controversy.”
In the case of Burwell (22 C. Cls. R., 92), where the amount allowed by the Southern Claims Commission was accepted under protest, under the language of a similar appropriation act it was held a bar to any further controversy and was excluded from the jurisdiction of the court.
In the case of Dowdy (23 C. Cls. R., 97, 100) it was in substance held that the payment of an award made by the Quartermaster-General under a similar appropriation act was conclusive and extended to every item of the claim which had been considered by the Quartermaster-General in reaching the award. (See Ford’s Case, 19 C. Cls. R., p. 519.)
True, the findings of this court under the act of 1883 are not judgments, but when the value of the property proved to have been taken and used by the United States has been judicially determined and reported to Congress their action thereon in making an appropriation to pay and the acceptance of the amount so appropriated by the claimant is in legal effect the same as the payment of a judgment, and operates, in the language of section 1092, as “a full discharge to the United States of all claim and demand touching any of the matters involved in the controversy.” And as to any claim arising out of the matters involved in .the controversy for any amount beyond that allowed by the court the same was barred under section 1093 when the last reference was made to the court.
The court has more than once had before it the question as to whether the payment of a judgment operates to discharge the United States from the claims involved in the controversy, and that question, in addition to the express words of the sections quoted, may now be considered as fully settled by this court. (Russell’s Case, 15 C. Cls. R., 168, 174; Michot's Case, 31 C. Cls. R., 299.)
If there be any doubt about the application of those sections to the findings of the court which were made the basis of the appropriation referred to, there certainly can be none as to the legal effect of the language used in the appropriation act,' so that in either event the claimant having accepted and receipted for the amount appropriated in full of the claims *361 involved, we must bold that the claim in the present suit is barred, and the findings of fact herein made, together with this opinion, will be reported to Congress for their final action.